UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON C. DIEBERT,

        Plaintiff,

v.                                                                                    Case No. 1:06-cv-612
                                                                           Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on November 6, 1949, completed the 11th grade and attended barber college (AR 58, 78),[1] and has previous employment as a barber (AR 86). Plaintiff alleged that she had been disabled since June 1, 1999 (AR 58). She identified her disabling condition as "injury to back as a child, lower back - middle back - neck & shoulders - affects legs & hands - sometimes skull area" (AR 72). Plaintiff stated that this condition interferes with her ability to work because she cannot stand, sit or walk for long periods, and feels like her spine cannot hold her body up when standing (AR 72). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying her claim on February 17,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

2006 (AR 17-26).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

2

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (June 1, 1999), and that she continued to meet the non-disability requirements for DIB through June 30, 2004 (her "last insured date") (AR 25). Second, the ALJ found that she suffered from severe impairments of "Ehlers-Danlos syndrome with widespread arthralgias; low back pain with spinal scoliosis and stenosis; neck pain with minimal degenerative changes of the cervical spine; osteoarthritis; asthma and obesity (AR 25).[2] At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 25).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift and carry up to twenty pounds occasionally and up to ten pounds frequently. She is able to stand and/or walk for two out of eight hours while using an assistive device, with the option to sit or stand at will. She is able to sit for six out of eight hours with the option to sit or stand at will. She cannot climb ladders, ropes or scaffolds. She is able to occasionally climb stairs or ramps, and to occasionally balance, stoop, crouch, kneel and crawl. She must avoid concentrated exposure to work hazards and lung irritants.

(AR 25-26). The ALJ found that plaintiff could not perform her past relevant work (AR 35). The ALJ also found that plaintiff's statements regarding her limitations are not totally credible (AR 25).

At the fifth step, the ALJ found that plaintiff could perform a range of light work (AR 25-26). The ALJ further found that plaintiff could perform a significant number of jobs in the

---

[2] "Ehlers-Danlos syndrome" is defined as "a group of inherited disorders of the connective tissue, occurring in at least ten types, I to X, based on clinical, genetic, and biochemical evidence, varying in severity from mild to lethal, and transmitted genetically . . ." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 1629.

national economy such as: inspector (2,500 jobs); information clerk (1,500 jobs); production assembler (8,000 jobs); and teacher's aid (2,500 jobs) (AR 26). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 26).

### III. ANALYSIS

Plaintiff raised the five issues on appeal:

### A. The final decision of the Commissioner of Social Security is not supported by substantial evidence.

Plaintiff's first issue is a generic claim that the ALJ's decision is not supported by substantial evidence. Plaintiff does not set forth a specific argument with respect to this issue. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim should be denied.

### B. The ALJ erroneously determined that plaintiff had the residual functional capacity to perform light work.

The ALJ found that plaintiff had the RFC to perform a range of light work, with the ability to stand about 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and the option to sit or stand at will (AR 25-26). Plaintiff contends that the ALJ erroneously determined that she could perform work at the light exertional level. Specifically, plaintiff contends that while plaintiff can lift the amount of weight required to perform light work, her ability to walk and stand about 2 hours in an 8-hour workday is indicative of the ability to perform sedentary work rather than light work. In this regard, plaintiff contends that the ALJ's RFC determination "more closely

describes sedentary work activity rather than light work activity." Plaintiff also contends that because she can only perform sedentary work, she should be found disabled under medical-vocational guidelines (or grids) at Rule 201.10 (i.e., she has an RFC limited to sedentary work, is closely approaching advanced age, and has skilled or semiskilled previous work experience that is not transferable).

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

The regulations provide the following definitions of light and sedentary work:

> To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:
>
> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also

>do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567.

Plaintiff relies on SSR 83-10 for determining that the ability to stand no more than 2 hours in an 8-hour workday is indicative of "sedentary" work. SSR 83-10 states in pertinent part that;

>Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours in an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.

SSR 83-10, text available at www.ssa.gov. The ruling further states that:

>Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.

*Id.*

In addition, plaintiff relies on SSR 96-9p, which provides in pertinent part that:

>Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

SSR 96-9p, text available at www.ssa.gov.

The court disagrees with plaintiff's contention. Plaintiff cites no case law or regulation to support her claim that although she can lift up to 20 pounds, she can perform work at only sedentary exertional level. SSR 83-10p and SSR 96-9p provide guidance to the ALJ's on how to account for a claimant's ability to sit and stand when characterizing the claimant as possessing

7

the ability to perform "sedentary" or "light" work. Another ruling, SSR 83-12, advises the ALJ utilize a vocational expert (VE) in those situations in which the claimant's exertional capacity falls in the middle of two different exertional capacities. SSR 83-12 provides in pertinent part as follows:

> The rules provide a basis for equitable consideration of the remaining occupational base, as follows:
>
> 1. If the individual's exertional capacity falls between two rules which direct the same conclusion, a finding of "Disabled" or "Not disabled," as appropriate, will follow.
>
>> a. As an example, where an exertional RFC is between the sedentary and light exertional levels and a finding of "Disabled" is indicated under both relevant rules, a finding of "Disabled" will follow. Even the complete occupational base (light) would not represent significant work for the individual.
>>
>> b. As a second example, where an exertional RFC is between medium and light work, and both relevant rules direct a conclusion of "Not disabled," the occupational base is clearly more than what is required as representing significant numbers of jobs because even the rule for less exertion directs a decision of "Not disabled."
>
> 2. If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>
>> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>>
>> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>>
>> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to

> disability. Accordingly, VS ["vocational specialist" or "vocational expert"] assistance is advisable for these types of cases.

SSR 83-12, text available at www.ssa.gov.

Here, plaintiff's limitations did not fall neatly within either the definitions of either "sedentary work" or "light work." The ALJ properly followed the procedure outlined in SSR 83-12, when she found that plaintiff's exertional limitations were somewhere "in the middle" of the regulatory criteria for sedentary and light work, and then utilized a VE to determine plaintiff's occupational base. Accordingly, the ALJ properly determined that plaintiff could perform a range of light work.

### C. The ALJ should have applied the Grid Ruling for a person closely approaching advanced age to direct a conclusion of disabled.

Next, plaintiff states that even if the ALJ correctly found her capable of performing light work, he should have found her disabled under a grid rule because she almost met the age requirement for a person "closely approaching advanced age," i.e., she was "less than 6 months shy of reaching age 55." Plaintiff's Brief at 6.

The medical-vocational guidelines or grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *See Taylor v. Commissioner of Social Security*, No. 98-4504, 1999 WL 1073656 at * 1 (6th Cir. Nov. 17, 1999); *Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). The grids only apply to a claimant when all factors (i.e., age, work

experience, physical ability and education) coincide with the elements as set forth in the grids. *See Taylor*, 1999 WL 1073656 at *1; *Kirk v. Secretary of Health and Human Servs.*, 667 F. 2d 524, 533-35 (6th Cir. 1981). When the findings of fact coincide with those four factors, the grids direct a conclusion as to disability or non-disability and vocational testimony is not required. *See Ziegler v. Sullivan*, No. 89-1708, 1990 WL 6954 at *5 (6th Cir. Feb. 1, 1990); *Kirk*, 667 F. 2d at 528-30.

Plaintiff's argument is without merit. Plaintiff does not point to a specific light work Grid Rule that the ALJ should have applied. The light work rule analogous to Grid Rule 201.10 is Grid Rule 202.11 (i.e., she is closely approaching advanced age and has skilled or semiskilled previous work experience that is not transferable). The record reflects that the ALJ used Rule 202.11 as a framework for decision-making as required under the five-step sequential evaluation (AR 26). Under this rule, plaintiff would be deemed "not disabled." Accordingly, the issue of her age is a moot point.

> **D.** **The ALJ failed to properly assess plaintiff's pain, limitations, and side effects from medications and credibility.**
>
> **E.** **The medical evidence contains objective evidence of medical conditions that can reasonably be expected to give rise to plaintiff's complaints of pain and limitations.**

Finally, plaintiff contends that the ALJ should have found her disabled because (1) the ALJ failed to properly evaluate her pain, limitations and medication side effects, and (2) her medical condition could reasonably be expected to produce disabling pain. For the reasons as set forth below, the court concludes that the ALJ's decision should be reversed and remanded for failure to adequately address these issues.

An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991). As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369. Despite the inexact nature of measuring a claimant's pain, the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853. In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined

11

medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

The court cannot apply the *Duncan* test in this instance, because the ALJ's decision does not adequately address the medical record of plaintiff's condition as it existed on or before her last insured date of June 30, 2004.

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). It is unnecessary for the ALJ to address every piece of medical evidence. *See Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). Nevertheless, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

In the present case, it is difficult for the court to trace the objective evidence regarding plaintiff's back and neck problems. First, while the record includes copies of radiology reports from July, September and October 2003 (AR 309), the ALJ gave only cursory attention to the x-rays taken in July, with no mention of the later tests performed in September and October (AR 19). Second, while the ALJ characterized an MRI study of plaintiff's cervical spine from April 11, 2005 as "pretty much normal" (AR 20), she did not give any details regarding that study, or the other three MRI studies conducted on that date (AR 315-18). Third, the ALJ makes only a passing

reference to plaintiff's Ehlers-Danlos syndrome, a condition which can range from mild to lethal (AR 20).[3]

A major issue in this case is whether plaintiff's medical conditions support a claim of disabling pain. The record includes objective medical evidence of various physical ailments, a number of which the ALJ characterized as severe impairments. However, the ALJ's cursory and selective discussion of the objective medical evidence prevents any meaningful review by this court. Accordingly, this matter should be reversed and remanded to the Commissioner for a more complete discussion of plaintiff's severe impairments, specifically the objective medical evidence of her spinal condition and Ehlers-Danlos syndrome, as those impairments existed on or before her last insured date of June 30, 2004.

**IV.    Recommendation**

I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the reasons as set forth in this report and recommendation.


Dated:  August 13, 2007                                          /s/ Hugh W. Brenneman, Jr.
                                                                 HUGH W. BRENNEMAN, JR.
                                                                 United States Magistrate Judge

---

[3] In some respects, it appears that the ALJ's decision may have been driven more by her observations at the hearing (e.g., "[t]he claimant got up and down like a Jack-in-the-Box at the hearing") than by an evaluation of the medical evidence (AR 21).

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).